In the Supreme Court of Georgia

Decided: April 26, 2016

S16A0389. LEWIS v. THE STATE.

MELTON, Justice.

Following a jury trial, Ronnie Duane Lewis was found guilty of malice

murder, armed robbery, burglary, false imprisonment, and aggravated assault in

connection with a home invasion and the beating and shooting death of Ophir

Thompson.[1] On appeal, Lewis contends that the trial court erred by denying his

motion to suppress two of his custodial statements to police, and that his trial

counsel was ineffective. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence

---

[1] On May 21, 2013, Lewis was indicted for malice murder, armed robbery, burglary, false imprisonment, and aggravated assault. Following a November 4-7, 2013 jury trial, Lewis was found guilty on all counts. On November 13, 2013, the trial court sentenced Lewis to life imprisonment without the possibility of parole for malice murder; consecutive sentences of twenty years for armed robbery, burglary, and aggravated assault; and ten consecutive years for false imprisonment. Lewis filed a motion for new trial on November 14, 2013, which he amended on May 7, 2015. Following a July 9, 2015 hearing, the trial court denied the motion on September 18, 2015. Lewis' timely appeal was docketed in this Court for the January 2016 Term and submitted for decision on the briefs.

reveals that, Thompson lived in a home on a fifteen acre horse farm in Haralson County. There was a second home on the property that Thompson also owned, and he rented that home to Lewis. On February 11, 2012, Lewis and Mickey Mulder went to Thompson's home while Lewis was brandishing what an eyewitness descried as a "long gun." This same eyewitness then saw Lewis break the glass in the window of the door to Thompson's home with this gun. A second eyewitness saw Lewis go into the house while holding a rifle. Once Lewis and Mulder got into the house, they restrained Thompson by wrapping his hands, feet, and torso with University of Georgia-themed duct tape. Lewis and Mulder then choked Thompson and beat him with the butt of Lewis' gun in an effort to get Thompson to reveal to them the combination for a safe in the house in which Thompson kept several guns and a great deal of cash. Lewis and Mulder were eventually able to open the safe, and they shot Thompson twice in the head, killing him. Lewis and Mulder stole multiple guns and thousands of dollars in cash from the safe. Lewis openly displayed his newfound money to others and later confessed to a friend that he had killed Thompson, but claimed that he had done so in self-defense and that he did not mean to do it. He also went to a friend's house to store several guns after the murder and robbery had

taken place.

In the early morning hours of February 12, 2012, Lewis signed a waiver of rights form and engaged in the first of two interviews with police that he had that day. The first interview lasted about thirty minutes, and the second interview took place roughly twelve hours later. In these interviews, Lewis confessed to police that he had struck Thompson in the head several times with the butt of a gun until the gun broke.

This evidence was sufficient to enable a rational trier of fact to find Lewis guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was free to reject Lewis' claim that he had only been acting in self-defense at the time that he killed Thompson. See, e.g., Roper v. State, 281 Ga. 878 (1) (644 SE2d 120) (2007) (witness credibility is for jury to decide, as is the question of justification; therefore, jury is free to reject claim that defendant acted in self-defense).

2. Lewis claims that the trial court erred by denying his motion to suppress

his first two custodial statements to police,[2] because he had not made his statements knowingly and voluntarily. Specifically, he contends that, because he was under the influence of drugs at the time that he gave these statements, the statements should have been excluded at his trial. We disagree.

"The mere fact that [a defendant] was intoxicated at the time of the statements does not automatically render them inadmissible. [Cit.]" Jones v. State, 285 Ga. 328, 329 (2) (676 SE2d 225) (2009). In this regard,

> [t]he trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances. On appeal, we accept the trial court's findings on disputed facts and credibility of witnesses unless clearly erroneous, but independently apply the legal principles to the facts.

(Citations and punctuation omitted.) Watkins v. State, 289 Ga. 359, 363 (4) (711 SE2d 655) (2011).

Here, in addition to reviewing both videotaped custodial statements from Lewis, the trial court also heard testimony at the Jackson Denno hearing from the investigator who interviewed Lewis in the videos. The investigator testified

---

[2] Apparently, Lewis also gave a third statement to police approximately two weeks after he gave them his first two custodial statements. However, that third statement is not at issue in this appeal.

that, with respect to Lewis' initial statement to police on February 12, 2012, at about 4:50am, Lewis was read his <u>Miranda</u> rights and Lewis indicated that he understood the waiver of rights form when he signed it; Lewis knew that the police were investigating Thompson's death; Lewis consented to the interview and knew what he was talking about during the interview; and Lewis did not appear to be intoxicated. About thirty minutes into the interview, Lewis claimed that he had been up for a couple of days straight and was high on methamphetamine. The police decided to terminate the first interview at that time, not because of any concern about Lewis being intoxicated or not knowing what was going on, but because Lewis had also indicated that he was tired and needed to get some sleep.

The police proceeded with a second interview of Lewis on the afternoon of February 12, 2012, about twelve hours after they had terminated their first interview with him. Before this second interview, the investigator again reminded Lewis of his <u>Miranda</u> rights and Lewis again consented to be interviewed. Lewis was more forthcoming in this interview, and he appeared to know what he was doing – even stating to police that he knew what was going on. In this interview, Lewis admitted to owning University of Georgia-themed

5

duct tape and striking Thompson multiple times in the head with the butt of a shotgun until the gun broke on Thompson's head.

Here,

[t]here was nothing to indicate that [Lewis'] statements, even if made while he was intoxicated, were not the product of rational intellect and free will. Based on our careful review of the evidence before the trial court, we find that the trial judge was authorized to find that [Lewis] was rational and coherent and that his statements were given knowingly and voluntarily. [Cit.]

Jones, supra, 285 Ga. at 329-330 (2).

3. Lewis contends that his trial counsel was ineffective for failing to request a jury instruction on the need for his custodial statements to be corroborated by independent evidence. See OCGA § 24-8-823 ("A confession alone, uncorroborated by any other evidence, shall not justify a conviction").

In order to succeed on his claim of ineffective assistance, [Lewis] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); Fuller v. State, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" Robinson v. State, 277 Ga. 75, 76 (586 SE2d 313) (2003).

6

Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

Pretermitting the question whether counsel rendered deficient performance by failing to request a charge on corroboraion, we find that, in light of the overwhelming evidence of Lewis' guilt, there is no reasonable probability that the trial result would have been different but for this alleged deficient performance. Indeed, in addition to his confession to police regarding his participation in the crimes at issue and his ownership of University of Georgia-themed duct tape connected to the crimes, an eyewitness saw Lewis and Mulder attempting to break into Thompson's home with a rifle on the day of the murder; a second eyewitness saw Lewis entering the home with a rifle; Lewis admitted to a friend that he had killed Thompson; and Lewis even showed to others the guns and money that he had suddenly acquired on the day of Thompson's death. Due to the overwhelming evidence of Lewis' guilt, we uphold the trial court's conclusion that Lewis has failed to carry his burden of proving that his trial counsel was ineffective. See, e.g., Landers v. State, 270 Ga. 189 (4) (508 SE2d 637) (1998).

Judgment affirmed. All the Justices concur.