308 Ga. 26
FINAL COPY

S19A1503.  THOMAS v. THE STATE.

PETERSON, Justice.

Daniel Maurice Thomas appeals his conviction for malice murder in connection with the shooting death of Elliott Mizell.[1] Thomas argues that the evidence was insufficient to support his conviction; that the trial court erred by admitting an involuntary custodial statement; and that trial counsel was ineffective in two ways. We affirm because the evidence was sufficient to support Thomas's convictions; the custodial statement was not involuntary;

---

[1] The crimes occurred on December 9, 2017. Thomas was indicted by a Houston County grand jury on February 20, 2018, and charged with malice murder, felony murder, and aggravated assault. On December 12, 2018, Thomas was found guilty of all three counts in a jury trial. On December 14, 2018, Thomas was sentenced to life in prison without parole for malice murder; the aggravated assault count merged with malice murder, and the felony murder count was vacated by operation of law. Thomas's trial counsel filed a motion for new trial on December 14, 2018. Appellate counsel filed an entry of appearance and a first amended motion for new trial on January 10, 2019. A second amended motion for new trial was filed on April 26, 2019. A motion for new trial hearing was held on April 30, 2019, and the trial court denied the motion the same day. Appellate counsel filed a notice of appeal on May 21, 2019. This case was docketed in this Court to the August 2019 term and submitted for a decision on the briefs.

and Thomas failed to show that his trial counsel was deficient as to one ineffective assistance of counsel claim, and failed to show prejudice as to the other.

Viewed in the light most favorable to the verdicts, the evidence presented at trial shows that in the early morning hours of December 9, 2017, Mizell was shot in the back of the neck while lying in his bed. Earlier that year, Mizell, who was known for mentoring young men in the community, had befriended Thomas and began to serve as a mentor to him. He offered Thomas help, such as giving him money and taking him to dinner.

On the day Mizell was killed, Mizell's neighbor was notified by a security alarm company that Mizell's security system was reporting a "low battery" signal. The neighbor went to Mizell's house and knocked on the door. Hearing no answer, he went inside and found that the house had been ransacked. The neighbor found Mizell lying on his bed with what appeared to be a blanket covering his head and immediately called 911. Upon instruction, he uncovered Mizell's head, and found him bloody and apparently deceased.

When police arrived, they found Mizell's body in the bed with a pillow case over his upper body. Authorities recovered a bullet and a pillow with burn marks on one side, which indicated that a bullet had been shot through it. Police determined that the gun had been fired from within the pillow case into Mizell's neck. There was no gun or other ammunition found in Mizell's residence, and testimony at trial revealed that Mizell did not own a gun. There was no indication on Mizell's body that he had been struggling or fighting with anyone. A State medical examiner later determined that Mizell died from a gunshot wound to his neck that severed his left carotid artery, causing him to bleed to death.

Police later obtained an Instagram video, that was posted on the day before the murder, showing Thomas holding a 9mm pistol. That evening, Thomas's friend, Christopher Crawford, gave Thomas a ride. When Crawford dropped Thomas off, he noticed an extended clip of ammunition sticking out of Thomas's shirt that appeared to be a part of a black 9mm gun. At some point in the following days, Thomas visited Crawford's house. When Thomas left, Crawford

3

suspected that something was wrong, so he started cleaning his house, and found hidden in his couch a black 9mm gun that resembled the gun Crawford had previously seen Thomas carrying.

The day after the murder, Thomas called his mother on Mizell's cell phone and admitted to her that he killed someone. Thomas's mother was out of town at the time, and Thomas told her a story about a robbery that had taken place in her home, which resulted in him shooting the robber. Thomas's mother did not believe Thomas's story, and after seeing a news report about Mizell's murder, she realized Thomas had called her using Mizell's phone. She called the police, reported Thomas's statements, and agreed to go to the police station for an interview. Police subsequently arrested Thomas pursuant to warrants.

Following Thomas's arrest, Detective Justin Clark read Thomas his *Miranda*[2] rights, and reviewed a form containing written advice and a waiver of rights pursuant to *Miranda*, which Thomas acknowledged and signed; Thomas agreed to answer

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

questions without an attorney present. In a video-recorded interview, Thomas admitted shooting and killing Mizell, claiming he did so using Mizell's gun and in self-defense because he was afraid Mizell would rape him. Thomas's custodial statement was admitted at his trial.

1. Thomas argues that, setting aside his statement that he claims was improperly admitted, the evidence was insufficient to prove that he committed the crime for which he was convicted. We disagree.

When we consider the sufficiency of the evidence, we view the evidence in the light most favorable to the verdicts and evaluate whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crime of which he was convicted. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). "Under this review, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." *Mims v. State,* 304 Ga. 851, 853 (1) (a)

(823 SE2d 325) (2019) (citation and punctuation omitted).

As explained below, Thomas's confession was properly admitted. But even if it were not, a sufficiency review under *Jackson* considers all evidence, whether admissible or not. *Jackson,* 443 U.S. at 319 ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." (emphasis in original)); see also *Green v. State*, 291 Ga. 287, 289 (1) (728 SE2d 668) (2012) (wrongfully admitted evidence may be considered in determining whether trial evidence was sufficient). Thomas provides no argument as to why the evidence — including his confession — was insufficient to support his conviction. The jury was authorized to reject his claim of self-defense and find beyond a reasonable doubt that Thomas was guilty of the crime of which he was convicted. See *Goodson v. State*, 305 Ga. 246, 248 (1) (b) (824 SE2d 371) (2019) ("Questions about the existence of justification are for the jury to resolve, and the jury may reject any

6

evidence in support of a justification defense and accept evidence that a shooting was not done in self-defense.").

2. Thomas raises two challenges relating to his confession. He argues that the trial court erred in denying his pretrial motion to suppress the custodial statement he made to police as involuntary in violation of OCGA § 24-8-824 because he was under the influence of alcohol and/or drugs at the time of the interrogation. He also argues that his confession was not sufficiently corroborated as required by OCGA § 24-8-823.

(a) OCGA § 24-8-824 requires that any confession must "have been made voluntarily" to be admissible. The trial court found Thomas's statement to be voluntary following a hearing on November 21, 2018. The trial court found that Thomas appeared to be coherent, understood his rights, and waived them freely and voluntarily, and that no promises or threats were made to encourage Thomas to make a statement.

Thomas argues that his statement was not voluntary because he was intoxicated. In deciding the admissibility of Thomas's

statements at the *Jackson-Denno*[3] hearing, the trial court was required to consider the totality of the circumstances and determine, by a preponderance of the evidence, whether the statements were knowingly and voluntarily given. Id. See also *Lewis v. State*, 298 Ga. 889, 890 (2) (785 SE2d 520) (2016). On appeal, "we accept the trial court's findings of fact and credibility determinations unless they are clearly erroneous; but where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo." *Norris v. State*, 302 Ga. 802, 804 (II) (809 SE2d 752) (2018) (citation and punctuation omitted). We identify no clear error.

At the *Jackson-Denno* hearing, the interviewing detective, Detective Clark, testified — and the video recording of the interview shows — that Thomas was informed of his rights under *Miranda* and formally waived those rights, and that Thomas expressed his understanding and willingness to speak with police both by nodding to show assent and in writing. Detective Clark also testified that he did not smell alcohol or marijuana on Thomas's breath, and

---

[3] *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

Thomas's appearance indicated that he was sober. The video shows that although Thomas told police that he was "f\*\*ked up" at the time of the murder, he gave no indication that he was intoxicated two days later when he was interviewed; he appeared calm and coherent.

This evidence sufficiently supports the trial court's determination that Thomas knowingly and voluntarily waived his rights and gave his statement. Thomas has not shown that the trial court clearly erred in denying Thomas's pretrial motion to suppress under OCGA § 24-8-824.

(b) Thomas also argues that his confession of guilt was not properly corroborated by other evidence as required by OCGA § 24-8-823, which provides in relevant part, "A confession alone, uncorroborated by any other evidence, shall not justify a conviction."[4] But this argument overlooks the difference between a confession and a mere incriminating statement.

---

[4] "[T]he confession corroboration requirement of OCGA § 24-8-823 was carried forward from OCGA § 24-3-53 of the old Evidence Code, and we may therefore properly rely on our precedents applying the old provision." *Muckle v. State*, 302 Ga. 675, 679 (1), n.6 (808 SE2d 713) (2017).

> [A] mere incriminating statement is made where the accused, though admitting to damaging circumstances, nonetheless attempts to deny responsibility for the crime charged by putting forward exculpatory or legally justifying facts. Thus, [a] statement which includes facts or circumstances which show excuse or justification is not a confession of guilt even if it admits the main fact[.]

*Robinson v. State*, 232 Ga. 123, 126 (2) (205 SE2d 210) (1974) (citation and punctuation omitted). See also *Merritt v. State*, 292 Ga. 327, 329 (1) (737 SE2d 673) (2013). Incriminating statements, unlike confessions, do not require corroborating evidence. *McMullen v. State*, 300 Ga. 173, 174 (1) (794 SE2d 118) (2016). Thomas's statement to police claimed self-defense, so it was a mere incriminating statement and corroboration was not required.

3. Thomas argues that his trial counsel was ineffective for failing to properly counsel him before trial, investigate facts, and interview witnesses. We disagree.

For Thomas to prevail on any of his ineffectiveness claims, he must satisfy the *Strickland* standard which requires a showing both that trial counsel's performance was constitutionally deficient and that Thomas was prejudiced by this deficient performance.

*Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984); *Mims*, 304 Ga. at 854-855 (2). "To establish deficient performance, [Thomas] must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in the light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, Thomas must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thomas must prove both prongs of the *Strickland* test, and if he fails to prove one prong, we need not examine the other prong. *Smith*, 296 Ga. at 733 (2). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. Id.

(a) Thomas argues that trial counsel was ineffective for failing to investigate the case and for failing to interview witnesses for the

11

prosecution and the defense. Specifically, Thomas alleges that counsel did not interview Thomas's mother, Calandra Duggar, until right before her testimony as a prosecution witness in the trial of this case, and that counsel did not interview Crawford, the State's witness who said he gave Thomas a ride the night of the murder. Thomas argues that these two witnesses were so crucial to the State's case that the outcome of the case would have been different if trial counsel had properly investigated these witnesses. We disagree.

"[T]rial counsel has the obligation to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary." *Barker v. Barrow*, 290 Ga. 711, 713 (1) (723 SE2d 905) (2012).

> But, in any case in which the ineffectiveness of counsel for inadequate investigation is claimed, the reasonableness of a particular decision not to investigate in the manner urged must be assessed in light of all the circumstances at that time, and such assessment must include a heavy measure of deference to counsel's judgments.

Id.

At the motion for new trial hearing, trial counsel testified that her office attempted to reach all of the State's witnesses, and that Thomas did not provide counsel with the names of, or other information about, other witnesses to investigate. She claimed that she thought her office "made contact with everybody that testified," including Crawford. She testified that one of the first steps she took in preparing the defense was attempting to contact Duggar. Counsel said her office attempted to reach Duggar by phone, and counsel sent investigators to Duggar's home, but she was unsuccessful in contacting Duggar until trial began. Counsel finally interviewed Duggar just before her testimony at trial and was able to ask questions and discuss the pending trial. Thomas provided no evidence to refute counsel's testimony. The trial court found "no defective representation on [trial counsel's] part at any point in the progress of the case or trial."

Thomas has not shown that counsel's efforts to contact all witnesses on the State's witness list, including Duggar and Crawford, were unreasonable. Counsel interviewed Duggar at the

13

earliest possible opportunity, and her co-counsel adjusted his cross-examination in response to the interview. "[T]o establish that trial counsel was deficient, [Thomas] has to show that no reasonable attorney would have failed" to contact Duggar before trial. *Kennedy v. State*, 304 Ga. 285, 288 (2) (818 SE2d 581) (2018). Because Thomas has failed to provide any evidence of trial counsel's deficiency, Thomas has not shown that counsel was deficient in this regard. *Hassel v. State*, 294 Ga. 834, 838-839 (2) (755 SE2d 134) (2014) (concluding trial counsel was not deficient where "[c]ounsel's failure to interview [witness] was attributable to [witness's] unavailability, not counsel's deficient performance").

(b) Thomas also alleges that trial counsel did not adequately consult with, advise, or prepare him prior to or during trial. We disagree.

The trial court found that counsel met with Thomas approximately eight times between his arrest in December 2017 and trial in December 2018. The trial court also found that counsel: gathered information from law enforcement, the media, her

14

investigators, the prosecution, and Thomas himself; shared all of this information with Thomas; counseled him as to the best defense; and filed numerous motions on his behalf. The trial court also noted counsel's testimony that the decision not to testify was "strictly" Thomas's decision. Thomas does not dispute this, but argues that the substance of the advice of his attorneys was lacking.

But Thomas provides no support for this claim and has failed to show how additional time consulting with Thomas would have led to a different outcome. Thomas's "claim of ineffective assistance of counsel is nothing more than speculation." *Vanholten v. State*, 271 Ga. App. 782, 783 (2) (a) (610 SE2d 555) (2005). Because Thomas has not shown that any alleged deficiencies in his counsel's consultation and preparation were prejudicial, his claim of ineffective assistance fails.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 10, 2020.
Murder. Houston Superior Court. Before Judge Lukemire.
*Jeffrey L. Grube*, for appellant.
*George H. Hartwig III, District Attorney, Daniel P. Bibler, Assistant District Attorney; Christopher M. Carr, Attorney General,*

15

*Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General*, for appellee.