NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 23, 2022

S22A0789. BONNER v. THE STATE.

LaGRUA, Justice.

Appellant Aurie Bonner III was convicted of murder in connection with the death of Christine Cook.[1] In this appeal, he

---

[1] Cook died on October 17, 2012. On February 19, 2013, a Bibb County grand jury indicted Appellant for malice murder, two counts of felony murder, aggravated assault, and burglary in the first degree. At a trial from August 26 to 28, 2013, the jury found Appellant guilty of all counts. Appellant was sentenced to serve life in prison without the possibility of parole for malice murder. The aggravated assault count was merged into malice murder for sentencing purposes, and the felony murder counts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). The trial court merged the burglary count into the malice murder count, but "[t]he burglary count . . . does not merge with malice murder as a matter of law, because each crime by definition requires proof of an element that the other does not." *Favors v. State*, 296 Ga. 842, 848 (5) (770 SE2d 855) (2015). However, because this merger error benefits the defendant and is not one of those exceptional circumstances in which we exercise our discretion to correct sentencing errors, we decline to correct it here. See *Dixon v. State*, 302 Ga. 691, 698 (4) (808 SE2d 696) (2017).

Appellant filed a timely motion for new trial, which the trial court denied in January 2022. Appellant filed a timely notice of appeal, and the case was docketed to this Court's April 2022 term and submitted for a decision on the briefs.

contends that his trial counsel provided constitutionally ineffective assistance. For the reasons explained below, we affirm.

The evidence presented at trial shows that in the early morning hours of October 18, 2012, law enforcement officers arrived at Cook's home to conduct a welfare check. Cook's front door was unlocked; she was discovered lying on the floor deceased "with a jacket with dry cleaner plastic on it draped over her face." A nearby jewelry box had been ransacked. The police determined that Cook's diamond wedding ring was missing, along with her Cadillac, a television, and a ruby ring. Cook's Cadillac was discovered abandoned approximately one block from her home; the police swabbed the Cadillac's steering wheel and collected DNA.

During his investigation, Sergeant Scott Chapman obtained the names of several men who performed maintenance at Cook's home, including Appellant's father, who did Cook's yard work for "a number of years." Law enforcement officers also obtained a photograph of Cook's wedding ring and circulated it to local pawn shops and jewelry stores. On October 23, Sergeant Chapman

2

responded to the pawn shop after an employee determined that a customer was attempting to pawn the same ring in the photograph.

At the pawn shop, Sergeant Chapman spoke with Lamar Johenkins, the customer who had attempted to pawn the wedding ring. Johenkins testified that Appellant came to his home on October 22 and sold him the ring for seven dollars. Johenkins gave the ring to his wife, but she did not want it, so he tried to pawn the ring.

Sergeant Chapman then located Appellant and placed him under arrest for an outstanding traffic citation. Appellant agreed to speak with the police regarding Cook's murder.[2] During Appellant's interview, which was recorded, he gave conflicting statements. Initially, Appellant stated he had not been to Cook's home within the last month and had purchased the wedding ring "from a crackhead." However, later in the interview, Appellant stated he went to Cook's home to perform yard work, left to buy cigarettes, and came back to find Cook deceased on the floor of her home. When

---

[2] At the beginning of the interview, Appellant was read his rights under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), and he waived said rights.

3

questioned further, Appellant then stated he went to Cook's home with a person named "Top Dog" to perform yard work. Appellant left Cook's home to buy cigarettes, and he came back to find "Top Dog" exiting Cook's home saying: "[M]an, I'm fixing to go . . . I done did something." Appellant then went inside Cook's home and found her deceased on the floor. During Appellant's latter two versions of events, he admitted to stealing Cook's wedding ring, her television, and her Cadillac; he denied stealing any other ring.

Appellant told the police that "Top Dog," a 17 year old member of the Bloods gang, was from the Pleasant Hill neighborhood, but it will be "hard to find him." The police then informed Appellant that he was under arrest for Cook's murder, and he was left alone in the interrogation room. While alone, Appellant placed a phone call to his sister. During this phone call, Appellant stated that "Terry" knows the real name of "Top Dog," that "Top Dog" was usually "downtown at the bus station," and "he just got out [of prison]." Appellant also stated that his cousin's girlfriend may know "Top Dog" because he once "showed his prison [identification card] to her." The police

4

obtained Bonner's DNA pursuant to a search warrant.

The police attempted to locate "Top Dog" by checking with their internal gang unit, speaking to people in various neighborhoods, and conducting patrols in Pleasant Hill. According to Sergeant Chapman, the police were unable to locate anyone who had ever "known anybody that goes by the specific nickname of 'Top Dog.'" At trial, Terry Miller, a family friend of Appellant's, testified that he did not know a person named "Top Dog."

At trial, the medical examiner testified that Cook's cause of death was asphyxiation either by manual strangulation or by smothering. The medical examiner also cut and collected some of Cook's fingernails and sent them for forensic testing. A GBI forensic biologist testified that he swabbed underneath Cook's fingernails and collected DNA. He further testified that Appellant's DNA matched the DNA collected from underneath Cook's fingernails and the DNA that law enforcement collected from the steering wheel of Cook's Cadillac.

1. Appellant contends that his trial counsel provided

constitutionally ineffective assistance in multiple ways. To prevail on these claims, Appellant must demonstrate both that his trial counsel's performance was professionally deficient and that he was prejudiced by this deficient performance. See *Bates v. State*, 313 Ga. 57, 62 (2) (867 SE2d 140) (2022) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, Appellant must show that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. Establishing deficient performance

> is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Appellant] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Vann v. State*, 311 Ga. 301, 303 (2) (857 SE2d 677) (2021) (citations and punctuation omitted).

6

To establish prejudice, Appellant must prove that there is a reasonable probability that, but for his trial counsel's deficiency, the result of the trial would have been different. See *Bates*, 313 Ga. at 62 (2). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). "And, this burden is a heavy one." Id. at 62-63 (2) (citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." Id. at 63 (2) (citation and punctuation omitted). "This Court accepts a trial court's factual findings and credibility determinations on an ineffectiveness claim unless they are clearly erroneous, but we apply legal principles to the facts de novo." *Powell v. State*, 309 Ga. 523, 526-27 (2) (847 SE2d 338) (2020).

Appellant contends that his trial counsel provided constitutionally ineffective assistance by failing to subpoena alibi evidence from Georgia Power. We disagree.

At the motion-for-new-trial hearing, Appellant's lead trial

counsel testified that Appellant told him that "he had gone to Georgia Power to pay a power bill" at the time of Cook's murder. Counsel asked his investigator "to check with [Georgia Power] to see if they had any sort of proof that he might have been there, any sort of receipt, or surveillance video, anything like that." However, counsel testified that the search "proved fruitless" and they "couldn't come up with anything that placed [Appellant] at [Georgia Power] at the time" of Cook's murder. Regarding alibi witnesses in general, counsel stated, "We searched for alibi witnesses; we just couldn't find any." Counsel was asked whether he served a subpoena on Georgia Power and responded that he did not, but he was not asked about why he did not do so.

"Concerning the adequacy of investigations, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, and heavy deference is given to counsel's judgments." *Henderson v. State*, 310 Ga. 231, 244 (3) (b) (850 SE2d 152) (2020) (citation and punctuation omitted). The undisputed testimony at the motion-for-

new-trial hearing was that trial counsel's investigator searched for evidence that Appellant was at Georgia Power during Cook's murder and this search "proved fruitless."

In his appellate brief, Appellant argues that "had a subpoena been issued [to Georgia Power] at the time of trial, exculpatory evidence *may* have been obtained." (Emphasis added.) However, Appellant was "required to offer more than 'mere speculation' that [a subpoena issued to Georgia Power] would have bolstered his defense." *Henderson*, 310 Ga. at 244 (3) (b). Here, Appellant offers mere speculation and has failed to show that a subpoena issued to Georgia Power would have discovered alibi evidence. Further, Appellant has failed to show that his trial counsel's failure to issue the subpoena was so patently unreasonable that no competent attorney would have followed such a course. Thus, Appellant has failed to demonstrate that his counsel performed deficiently, and this ineffectiveness claim fails. See id. (trial counsel did not perform deficiently when his investigator "reach[ed] out to [potential alibi witnesses], but they could not be found or could not testify to a

credible alibi defense on [the defendant's] behalf").

2. Appellant contends that his trial counsel provided constitutionally ineffective assistance by failing to cross-examine Sergeant Chapman, the medical examiner, or "many of the factual witnesses." We disagree.

At the motion-for-new-trial hearing, Appellant's lead trial counsel testified that he could not recall why he cross-examined only four of the State's witnesses. But, counsel elaborated as follows:

> [I]t's typically my practice to cross[-]examine the witness if I have something to cross[-]examine the witness about. Sometimes the best thing I can do is to get them off the stand. Sometimes there's really nothing more to go into. They're sort of—if it's a neutral witness that's just something that they know, there's generally not a lot of room for cross[-]examination.

He further testified that he did not cross-examine the medical examiner because "it seemed like the cause of death was pretty certain" and "[t]o go in a different direction . . . would have been pointless."

"The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel."

10

*Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020) (citation and punctuation omitted). "More specifically, the extent of cross-examination is a strategic and tactical decision." See id. (citation and punctuation omitted). "Decisions about cross-examination do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances. See id. (citation and punctuation omitted).

In his appellate brief, Appellant argues merely that his trial counsel performed deficiently by failing to cross-examine Sergeant Chapman, the medical examiner, or "many of the factual witnesses." However, Appellant has failed to demonstrate how cross-examination of these witnesses would have been helpful to him. See *Johnson v. State*, 310 Ga. 685, 692 (3) (853 SE2d 635) (2021) (the appellant failed to show deficient performance under *Strickland* where he "does not explain, and the record does not show, how [the] cross-examination would have been particularly helpful to him"). Thus, Appellant has failed to demonstrate that his counsel

11

performed deficiently, and this ineffectiveness claim fails.

3. Appellant contends that his trial counsel provided constitutionally ineffective assistance by failing to present any defense witnesses. We disagree.

Appellant has failed to articulate which witnesses his trial counsel should have presented at trial and what their testimony would have been. Even so, as stated in Division 1, Appellant's lead trial counsel testified at the motion-for-new-trial hearing, "We searched for alibi witnesses; we just couldn't find any."

"[A] decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances." *Sullivan v. State*, 308 Ga. 508, 511 (2) (a) (842 SE2d 5) (2020) (citation and punctuation omitted). Here, Appellant has failed to carry his burden to demonstrate that his trial counsel performed unreasonably when he has failed to even articulate which witnesses his trial counsel should have presented at trial and how

12

their testimony would have been favorable to Appellant. Thus, Appellant has failed to demonstrate that his counsel performed deficiently by failing to present witnesses, and this claim fails.

*Judgment affirmed. All the Justices concur.*