**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 4, 2024**

# In the Court of Appeals of Georgia

A23A1753. THOMAS v. THE STATE.

MARKLE, Judge.

Following a jury trial, Antonios Thomas was convicted of rape and aggravated sodomy. He now appeals from the denial of his motion for new trial, arguing that (1) the trial court erred by (a) failing to instruct the jury regarding impeachment of a witness; (b) admitting other acts evidence under OCGA § 24-4-413 ("Rule 413"); (c) instructing the jury on other acts evidence under Rule 413; and (d) expressing its opinion that the prior act qualified as a "sexual offense" under Rule 413; (2) he received ineffective assistance of counsel when counsel failed to (a) move to exclude the Rule 413 testimony because the State's notice was untimely; (b) advise him properly of impeachment should he testify; and (c) investigate the case or present

exculpatory witnesses; and (3) he did not knowingly and voluntarily waive his right to testify. For the reasons that follow, we affirm.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence showed that the victim, M. L., spent the night at a bar with friends and then returned to the apartment she shared with her boyfriend, T. T., in the early morning hours in May 2016. T. T. was at the apartment with several friends, including Thomas. After she and T. T. engaged in sex, the victim took a Xanax and fell asleep naked, and T. T. left the apartment with the friends to get some cigarettes. Thomas remained at the apartment. A short time later, the victim woke up when she felt someone touching her. She turned and saw Thomas trying to push his penis into her anus. The victim pushed Thomas away, and he ran from the apartment, partially dressed and without any shoes.

The victim chased Thomas down the street, where they encountered T. T. returning from the store. The victim told T. T. that Thomas had raped her. T. T. flagged down a police car, and the officer began to chase Thomas, who was barefoot and holding up his pants as he was running, eventually losing sight of him. The victim

spoke with the investigating officers, gave a description of Thomas, and was taken to the hospital for examination.

Thomas was then indicted for rape and aggravated sodomy. Prior to trial, the State filed notice of its intent to offer evidence of Thomas's prior conviction for statutory rape in 1998 under OCGA §§ 24-4-404 and 24-4-413. Following a hearing, and over Thomas's objection, the trial court concluded the evidence was admissible to show motive, intent, plan, and common scheme.

At trial, the victim, T. T., and the various investigators testified as recounted above. The State also presented the testimony of the emergency room physician who examined the victim, and the forensic biologists who processed the rape kit and tested the DNA samples. The forensic experts confirmed that samples taken from the rape kit did not identify Thomas.

The State then proffered evidence of Thomas's prior conviction for statutory rape of a different victim, H. M., under Rule 413. Defense counsel did not object to the admission of a certified copy of the conviction under Rule 413. But she asked for and received a continuing objection to H. M.'s testimony, and the trial court gave the jury a limiting instruction. H. M. then testified that, in 1996, when she was only 15

years old, she met Thomas one night at a friend's apartment. Thomas asked if she wanted to go to the store with him, and she agreed. On the way, however, Thomas pulled the car over, unfastened H. M.'s seatbelt, unhooked her bra, and touched her breasts without her consent. He then moved into the passenger seat, pulled her pants and underwear down, and climbed on top of her and raped her.

After the State rested its case-in-chief, the trial court inquired whether Thomas wished to testify. The trial court advised Thomas of his right to do so, and specifically advised him that the decision was entirely his and not his attorney's. Thomas declined to testify. The jury convicted Thomas on all charges.

Thereafter, Thomas filed a motion for new trial, which he amended several times, raising the issues he now raises on appeal. At the motion for new trial hearing, trial counsel testified that she had ample time to prepare for trial and meet with Thomas. She advised Thomas of the advantages and disadvantages of testifying at trial, including that he would be impeached with his prior convictions and the jury would be able to assess his demeanor and credibility, but that the choice was his. She confirmed that Thomas never indicated he wanted to testify. When asked about the admission of the prior acts evidence, counsel stated that she had a certified copy of the

4

conviction, so she knew it would be admitted, but she could not remember why she did not object to the timeliness of the State's notice under Rule 413 (b). She also did not object to the trial court's limiting instruction or its charge to the jury regarding the Rule 413 evidence. Trial counsel then testified that she did not fail to investigate or present exculpatory evidence because her defense strategy was that Thomas did not commit the crime.

Thomas also testified at the hearing, explaining that he had met with trial counsel only five times, and he walked out on her three of those times. He stated that counsel never discussed the evidence or witnesses with him, and they did not talk about the Rule 413 evidence. He explained that counsel did not investigate any positive character evidence, such as testimony from his sister or pastor; nor did she speak to the investigator assigned to the case, who would have testified that the victim gave three different stories to police. Thomas stated that counsel scared him so much that he could not testify because she warned him that the prosecutor would bring up everything in his criminal record, and he relied on her advice even though he wanted to testify and tell his side of the story.

5

The trial court denied the motion for new trial, finding that the Rule 413 evidence and testimony were properly admitted, nor did the trial court comment on the evidence when giving the jury its limiting instruction or final charges. The trial court further found that Thomas had knowingly, voluntarily, and intelligently waived his right to testify based on counsel's advice. With regard to the ineffective assistance of counsel claims, the trial court found that Thomas had not shown counsel's performance was deficient or that he was prejudiced as a result. Thomas now appeals.

1. Thomas first argues that the trial court plainly erred when it failed to instruct the jury on attacking a witness's credibility, specifically that the victim's drinking and medications may have impacted her ability to properly recall or perceive the events. Thomas has not met his burden to show plain error.

Thomas did not object to the jury instructions on the ground he raises on appeal, and thus our review is limited to whether the instructions amount to plain error. *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015).

> Review for plain error means that we will reverse the trial court only if there was an instructional error that was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. [Thomas] has the burden of showing

a clear or obvious error and further making an affirmative showing that the error probably did affect the outcome below.

(Citations and punctuation omitted.) *Smith v. State*, 315 Ga. 357, 362 (3) (882 SE2d 289) (2022).[1]

Thomas contends that there was slight evidence to support a jury charge regarding the victim's ability to perceive the events due to her drinking and medication use. The victim testified that she was "kind of tipsy" and had taken a Xanax when she got home. But Thomas has not shown how the instructions as given were erroneous or that he was prejudiced by the instructions. First, defense counsel extensively cross-examined the victim on the amount she had to drink and the effect of the Xanax, and she admitted that Xanax could interfere with her memory. Counsel also pointed out inconsistencies between the victim's testimony at trial and statements she gave to police immediately after the rape. Thus, the jury was able to assess her

---

[1] Thomas did not request a credibility instruction and did not object to the instructions as given on the ground raised on appeal. But he did not affirmatively waive the error. See *Holt v. State*, 352 Ga. App. 504, 507 (1) (a), n. 1 (835 SE2d 336) (2019) ("For purposes of plain error review, an affirmative waiver requires the intentional relinquishment or abandonment of a known right, and the mere failure to object does not constitute such an affirmative waiver because it is more appropriately described as a forfeiture.") (citation and punctuation omitted).

credibility in light of this testimony. See *Kittrell v. State*, 358 Ga. App. 93, 96 (1) (853 SE2d 678) (2021).

Moreover, the jury was instructed to determine each witness's credibility and it based on "their means and opportunity of knowing the facts about which they testify," as well as any inconsistencies in the testimony. This mirrors the pattern jury instructions, and encompasses the instruction Thomas now claims should have been given. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2023), § 1.31.10; see also *Smith v. State*, 301 Ga. 79, 81-82 (3) (799 SE2d 762) (2017) (approving pattern instruction on credibility). As a result, Thomas cannot show plain error. *Thomas v. State*, 297 Ga. 750, 754-755 (4) (778 SE2d 168) (2015); see also *Walker v. State*, 311 Ga. 719, 724-725 (859 SE2d 25) (2021) (no prejudice shown where instructions as a whole covered omitted instructions); *Thompson v. State*, 341 Ga. App. 883, 885 (2) (802 SE2d 713) (2017) ("An erroneous jury instruction cannot be considered in isolation, but must be considered in the context of the entire jury charge on the record as a whole to determine whether there is a reasonable likelihood that the jury improperly applied the challenged instruction.") (citation and punctuation omitted).

2. Thomas next argues that the trial court abused its discretion by admitting the Rule 413 evidence because it was not relevant or probative of Thomas's intent or motive; its prejudicial nature outweighed any probative value; and the trial court never addressed whether the evidence was necessary for the prosecution's case. He notes that the trial court did not admit the evidence to show propensity, as it explicitly instructed the State it could not make that argument. Pretermitting whether this enumeration was properly preserved, we conclude there was no abuse of discretion.

"A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." (Citation and punctuation omitted.) *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017).

> OCGA § 24-4-413 generally allows the prosecution in a sexual-assault case to offer "evidence of the accused's commission of another offense of sexual assault" for its bearing on "any matter to which it is relevant," OCGA § 24-4-413 (a), including the defendant's propensity to commit sexual assault. This provision creates a rule of inclusion, with a strong presumption in favor of admissibility. At the same time, in considering extrinsic evidence of another offense, the trial court must balance the relevance of the evidence against its potential to cause unfair prejudice to the defendant. This balancing requires a common sense assessment of all the circumstances surrounding the

9

extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness.

(Citations and punctuation omitted.) *State v. Berrien*, 364 Ga. App. 217, 225 (2) (874 SE2d 430) (2022).

As an initial matter, Thomas appears to confuse the admission of evidence under Rule 413 with admissibility under OCGA § 24-4-404 (b) ("Rule 404 (b)"), likely because the State cited both bases in its notice to admit prior acts evidence.[2] But Rule 413 supercedes OCGA § 24-4-404 (b) in cases involving sexual assault. *McAllister v. State*, 351 Ga. App. 76, 80 (1) (830 SE2d 443) (2019).

Here, although the trial court erroneously limited the use of the prior conviction to show only intent, motive, and common scheme, and it expressly forbade the State from mentioning propensity in its closing argument, the evidence was admissible under Rule 413. First, the other acts evidence was relevant to Thomas's identity and

---

[2] In its notice, the State listed both Rule 413 and Rule 404. Under Rule 413, the evidence is admissible for any purpose, including propensity, but under Rule 404 (b), the evidence would be limited to show intent, motive, plan, and common scheme. See OCGA §§ 24-4-413 (a); 24-4-404 (b). Despite Rule 413's clear permission to allow prior acts evidence to show propensity, the trial court limited its use to those purposes listed in the State's notice, and the State repeatedly lodged objections to the trial court's ruling.

intent, especially where, as here, the defense sought to attack the victim's credibility. "[T]he term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." (Citation and punctuation omitted.) *Martinez-Arias v. State*, 313 Ga. 276, 284-285 (3) (869 SE2d 501) (2022); see also OCGA §§ 24-4-401; 24-4-402; *Brooks v. State*, 365 Ga. App. 711, 725 (5) (880 SE2d 226) (2022); *Dixon v. State*, 350 Ga. App. 211, 213-214 (1) (828 SE2d 427) (2019). As our Supreme Court has explained,

> [r]elevance and probative value are related, but distinct, concepts. Relevance is a binary concept — evidence is relevant or it is not — but probative value is relative. Evidence is relevant if it has *"any tendency"* to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal

11

value of the evidence in question. And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.

(Citation omitted; emphasis in original.) *Jones v. State*, 301 Ga. 544, 546-547 (1) (802 SE2d 234) (2017); *McAllister*, 351 Ga. App. at 77 (1).

Thomas's conviction for a previous sexual assault is relevant to whether he committed the instant offense. And, although Thomas contends that his prior statutory rape conviction was not relevant to his intent or motive in the instant case because there were different elements of the offenses and differences in the victims, Rule 413 expressly includes statutory rape as one of the prior acts that would be admissible.[3] OCGA §§ 24-4-413 (d) (1); 16-6-3 (a).

---

[3] Moreover, there is no merit to Thomas's argument that the legislature's use of the word "shall" in Rule 413 simply means that it is "capable of being admitted." As we have repeatedly explained, "the language of [Rule 413] creates a rule of inclusion, thus providing a strong presumption in favor of admissibility by explaining that such evidence 'shall be admissible.'" (Citations and punctuation omitted.) *McAllister*, 351 Ga. App. at 80 (1).

We also conclude that the trial court properly conducted the balancing test in OCGA § 24-4-403 (Rule 403) to ensure that the probative value of this evidence outweighed any prejudicial effect.

> [E]xclusion under Rule 403 is an "extraordinary remedy" — particularly when the evidence is already strongly presumed to be admissible. Exclusion is appropriate only when the demonstrable probative value . . . is substantially outweighed by the danger of unfair prejudice. Not just a little outweighed, but substantially. And prejudice is not 'unfair' simply because it tends to inculpate the defendant in an awful crime. Rather, it is unfair only if it creates an undue tendency to suggest decision on an improper basis such as an emotional one. Therefore, when applying Rule 403 balancing to evidence of prior offenses of sexual assault, the court must take into account that such evidence is naturally prejudicial. However, generally, it is not unfairly prejudicial; rather it is prejudicial for the same reason it is probative: it tends to prove the defendant's propensity to engage in sexual assault.

*State v. Ippisch*, 366 Ga. App. 501, 504 (883 SE2d 162) (2023).

In its order finding the evidence admissible, the trial court expressed that the probative value was not substantially outweighed by any unfair prejudice. The trial court noted the remoteness of the prior offenses, but nevertheless concluded that such temporal remoteness would not render the evidence inadmissible. This is consistent

13

with our precedent. See, e. g., *Harris v. State*, 340 Ga. App. 865, 868-869 (1) (b) (798 SE2d 498) (2017) (molestation that occurred 44 years earlier admissible despite remoteness in time); *Eubanks v. State*, 332 Ga. App. 568, 570 (1) (774 SE2d 146) (2015) (prior sexual assault 17 years earlier was admissible). In its order denying the motion for new trial, the trial court again explained that Rule 403 did not require exclusion of the evidence. And the trial court is not required to put its Rule 403 analysis in the record as long as the record shows that the trial court applied the balancing test. See *Dixon*, 350 Ga. App. at 214-215 (1) ("[a]bsent some express showing that the trial court did not understand its obligation to conduct the balancing test, we will not read such error into the trial court's ruling. . . . Moreover, we have never held that the trial court is required to explicitly analyze the balancing test on the record.").

Finally, we note that the trial court gave limiting instructions both at the time the evidence was admitted and again in its final jury charge, thereby minimizing the risk of undue prejudice. *Brooks*, 365 Ga. App. at 725 (5). As set forth above, we cannot say the trial court abused its discretion by admitting the evidence under Rule 413.

3. Thomas next argues that the trial court erred when it gave the instruction concerning the Rule 413 evidence because it did not define "offense of sexual assault" so that the jury could determine if the prior act constituted a sexual offense. He contends that the allegation that he touched the victim's chest in the prior act did not qualify as a sexual assault, and as such it was misleading to the jury and reduced the State's burden of proof. We disagree.

When a defendant is accused of a sexual assault, Rule 413 permits the admission of "another offense of sexual assault." OCGA § 24-4-413 (a). An "offense of sexual assault" is defined to include statutory rape and sexual battery. OCGA § 24-4-413 (d) (1).

Importantly, whether the prior act qualified as an offense of sexual assault is a question of law for the trial court rather than an issue for the jury. *Wilson v. State*, 312 Ga. 174, 179-180 (1) (c) (860 SE2d 485) (2021) (addressing issue under OCGA § 24-4-414). Here, the trial court conducted a hearing prior to admitting the evidence, and it heard the prior victim's testimony regarding Thomas's conduct. It also admitted a certified copy of Thomas's conviction for statutory rape. As this evidence was sufficient to enable the trial court to confirm that Thomas's prior acts qualified as

15

"offense[s] of sexual assault," the evidence was admissible, and Thomas cannot show any error in an instruction that did not define this term for the jury.

4. Thomas also argues that the trial court improperly commented on the evidence and invaded the jury's role by suggesting that Thomas had committed the prior acts.[4] We are not persuaded.

Under OCGA § 17-8-57 (a) (1), "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." Here, Thomas takes issue with the following limiting instruction given prior to the other acts testimony and again in the final charge: "Sometimes evidence is admitted for a limited purpose. . . . The State is going to offer evidence of another offense of rape and child molestation committed by the accused."

Plain error review requires Thomas to show that he did not affirmatively waive the error. *Smith*, 315 Ga. at 362 (3). Here, during a discussion about the limiting instruction, the trial court proposed telling the jury "the State has offered evidence

---

[4] Although Thomas asserts that we may review this claim de novo, he did not raise any objection before the trial court; therefore, our review is limited to plain error. OCGA § 17-8-57 (b).

16

of another offense of statutory rape allegedly committed by the accused." Defense counsel specifically asked the trial court to remove the word "allegedly" from the instruction. Thus, defense counsel invited the alleged error and Thomas cannot meet his burden under plain error review. *Woodard*, 296 Ga. at 810 (3) (a) (defendant affirmatively waived error when he specifically requested the allegedly erroneous instruction).

5. In a series of arguments, Thomas contends that he received ineffective assistance of counsel based on (a) the failure to object to and move to exclude the Rule 413 evidence because the State's notice was untimely; (b) counsel's warning to Thomas that he could be impeached with all of his prior convictions if he chose to testify; and (c) the failure to investigate and present exculpatory evidence. We conclude that Thomas cannot meet his burden to show he received ineffective assistance.

> To succeed on a claim that counsel was constitutionally ineffective, [Thomas] must show both that his attorney's performance was deficient, and that he was prejudiced as a result. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Under the first prong of this test, counsel's performance will be found deficient only if it was objectively unreasonable under the

17

circumstances and in light of prevailing professional norms. And under the second prong, prejudice is demonstrated only where there is a reasonable probability that, absent counsel's errors, the result of the trial would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome. Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. And although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

(Citations and punctuation omitted.) *Green v. State*, 302 Ga. 816, 817-818 (2) (809 SE2d 738) (2018). When we evaluate ineffective assistance of counsel claims, we are mindful that

[e]stablishing deficient performance is no easy showing, as the law recognizes a strong presumption that counsel performed reasonably, and [Thomas] bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

18

(Citations and punctuation omitted.) *Bonner v. State*, 314 Ga. 472, 474 (1) (877 SE2d 588) (2022). With these guidelines in mind, we turn to Thomas's specific allegations of error.

(a) Thomas first argues that trial counsel failed to object to and move to exclude the Rule 413 evidence — both the victim's testimony and the certified copy of the conviction — because the State's notice was untimely.

Rule 413 (b) provides, "[i]n a proceeding in which the prosecution intends to offer evidence under this Code section, the prosecutor shall disclose such evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least ten days in advance of trial, unless the time is shortened or lengthened or pretrial notice is excused by the judge upon good cause shown." We have found no case law from our courts addressing the notice provision. Rule 413 mirrors the federal rule, and we may look to federal decisions for guidance. *State v. Almanza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018) ("[i]f a rule in the new Evidence Code is materially identical to a Federal Rule of Evidence, we look to federal case law."). The federal courts that have considered the notice requirement have pointed to the obligation to disclose "the evidence," which includes "witnesses'

statements or a summary of the expected testimony." *United States v. Arce*, 49 F4th 382, 394 (II) (C) (4th Cir. 2022); see also *United States v. Benais*, 460 F3d 1059, 1062 (II) (A) (8th Cir. 2006).

As an initial matter, we find no deficient performance in the failure to object to the certified copy of the prior conviction, as this was given to Thomas well in advance of trial. Thus, any objection to this evidence would have been meritless and cannot form the basis for an ineffective assistance claim. See *Smith v. State*, 315 Ga. 357, 367 (5) (b) (882 SE2d 289) (2022).

Turning to the admission of the Rule 413 witness's testimony, the State notified Thomas's original attorney more than ten days prior to trial that it intended to introduce evidence of Thomas's 1998 guilty plea to rape and child molestation, but it indicated that witnesses and information would be forthcoming. It does not appear that the State ever updated the notice to proffer the victim's statement.

Pretermitting whether the State's notice was sufficient, and whether counsel should have raised an objection to it, see *Arce*, 49 F4th at 394 (II) (C), Thomas cannot show prejudice. "The burden of showing a reasonable probability that the outcome would have been different but for counsel's deficient performance, though not

20

impossible to carry, is a heavy one." (Citation and punctuation omitted.) *Revere*, 302 Ga. at 49 (2) (a). Here, M. L. testified to the rape and assault, and her testimony was corroborated by testimony from her boyfriend and a police officer, both of whom observed Thomas running from the scene without shoes while holding his pants up. OCGA § 24-14-8 (generally, the testimony of one witness is sufficient to support a conviction). Although this evidence is not overwhelming, Thomas has offered nothing but speculation that the outcome would have been different had the jury only received a certified copy of Thomas's prior conviction, but not the other victim's testimony about the statutory rape. Such speculation is insufficient to meet his burden. *Thomas v. State*, 308 Ga. 26, 32 (3) (b) (838 SE2d 801) (2020); see also *Vanholten v. State*, 271 Ga. App. 782, 784 (2) (d) (610 SE2d 555) (2005) (defendant made only "bold assertions that the outcome of his trial would have been different completely unsupported by anything that would affirmatively show why such would be the case. Such speculation raises no more than a mere possibility, a showing which is insufficient to establish ineffective assistance of counsel.") (citation and punctuation omitted).

(b) Thomas next contends that counsel's performance was deficient when she warned him that he could be impeached with all of his prior convictions if he chose to testify.

Prior to trial, the State gave notice of its intent to use Thomas's lengthy criminal history for impeachment. These offenses included non-sexual crimes, some of which dated back more than 25 years.

Pretermitting whether trial counsel properly advised Thomas that he could be impeached with any — or all — of these prior convictions, Thomas cannot meet the heavy burden to show prejudice. Thomas stated at the motion for new trial hearing that he wanted to testify about what actually happened in both the instant case and his prior statutory rape case, to which he had already pled guilty. But Thomas cannot show a reasonable probability that his testimony, including his denial of acts to which he pled guilty, would have swayed the jury to reach a different verdict. *Revere*, 302 Ga. at 49 (2) (a); *Vanholten*, 271 Ga. App. at 784 (2) (d).

(c) In his last enumeration of ineffective assistance, Thomas argues that trial counsel failed to investigate and present exculpatory evidence.

22

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary, and heavy deference is given to counsel's judgments." (Citation omitted.) *Bonner*, 314 Ga. at 475 (1).

At the hearing, counsel testified that she did not fail to investigate the case, as the strategy was that Thomas did not commit the crime. Thomas testified that counsel did not talk to the investigating officer, who would have confirmed that the victim gave conflicting stories to police, and counsel never spoke to his pastor or his sister to provide positive character evidence. But, Thomas did not call the investigator, his pastor, or his sister to testify at the motion for new trial hearing, nor did he present any witnesses at that time to establish what exculpatory evidence trial counsel should have uncovered and presented during the trial; thus, he has offered only speculation and he cannot establish prejudice. *Bell v. State*, 287 Ga. 670, 675 (3) (697 SE2d 793) (2010) ("Bell did not offer any evidence at the motion for new trial hearing as to whether the witnesses would have testified, offered only speculation as to the possible testimony of one of the witnesses, and did not offer even speculation about the possible testimony of the other witness. He again has shown no prejudice."); *Moody v. State*, 277 Ga. 676, 681 (6) (a) (594 SE2d 350) (2004) (appellant could not show

23

prejudice where he failed to offer exculpatory evidence that allegedly would have been found during an investigation).

6. Finally, Thomas argues that he did not knowingly and voluntarily waive his right to testify because he relied on counsel's incorrect advice regarding the possibility of impeachment.

"In criminal proceedings, the law is clear that a defendant has a constitutional right to testify in his own defense, but he can waive that right after consulting with an attorney." *Merchant v. State*, 365 Ga. App. 42, 46-47 (3) (877 SE2d 361) (2022).

> In Georgia, whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel and there is no general requirement that a trial court interject itself into that decision-making process. Defense counsel bears the primary responsibility for advising the defendant of his right to testify and the strategic implications of this choice, as well as for informing the defendant that the decision whether to testify is his to make. Thus, while it may be preferable to do so, the trial court is not required to inquire on the record whether a defendant knowingly waived his right to testify.

(Citations and punctuation omitted.) Id. at 47 (3); see also *Warren v. State*, 314 Ga. 598, 604 (2) (b) (878 SE2d 438) (2022).

Here, during trial, the court questioned Thomas about whether he wished to testify, informing him that the decision was his alone. Thomas confirmed that he did not wish to testify. At the motion for new trial hearing, defense counsel testified that she and Thomas discussed whether he should testify, and she explained the pros and cons to him. She explained that she typically tells clients that the decision is theirs, and she warned Thomas that he could be impeached with his prior convictions, and that the jury would evaluate his credibility. According to counsel, Thomas never indicated he wanted to testify. In his testimony, Thomas stated that he discussed testifying with counsel, but that she "scared him so bad" that he said he did not want to testify. He explained that he relied on counsel's advice because she told him the State would bring up everything in his record. The trial court found that Thomas failed to show how any alleged mis-advice prejudiced him.

The record supports the trial court's findings. *Finch v. State*, 287 Ga. App. 319, 321 (1) (b) (651 SE2d 478) (2007). The trial court advised Thomas that the decision was his, and Thomas admitted that counsel told him the same as well. *Warren*, 314 Ga. at 604 (2) (b). In light of this testimony, Thomas cannot show that his waiver of the right to testify was involuntary.

For the foregoing reasons, we affirm the denial of Thomas's motion for new trial.

*Judgment affirmed. McFadden, P. J., and Brown, J., concur.*