In the Supreme Court of Georgia

Decided:   October 19, 2015

S15A1247. CASH v. THE STATE.

BLACKWELL, Justice.

Appellant Larry Craig Cash was tried by a Haralson County jury and
convicted of two murders. He appeals, contending that the evidence is
insufficient to sustain his convictions and that the trial court mischarged the
jury. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] The victims were killed on March 3, 2005. The appellant and Jimmy Wayne Wright
were indicted on May 3, 2005, and each was charged with two counts of malice murder, two
counts of felony murder, and two counts of aggravated assault. The State gave notice of its
intent to seek the death penalty. Wright pled guilty to all counts on March 17, 2008 and was
sentenced to life imprisonment without the possibility of parole on each of the two counts
of malice murder. See Wright v. State, 292 Ga. 825 (742 SE2d 468) (2013) (affirming the
denial of Wright's motion to withdraw his guilty plea). The State then withdrew its notice
of intent to seek the death penalty as to the appellant, and he was tried beginning on July 7,
2008. The jury returned its verdict on July 23, 2008, finding him guilty on both counts of
felony murder and one count of aggravated assault. The jury acquitted the appellant on the
other counts. The appellant was sentenced to consecutive terms of imprisonment for life for
the murders, and the aggravated assault of which the appellant was found guilty merged with
one of the murders. The appellant timely filed a motion for new trial on August 11, 2008, and
he amended it on January 11, 2012 and again on March 16, 2012. The trial court denied his
motion on September 4, 2014, and the appellant timely filed a notice of appeal on September
30, 2014. This case was docketed in this Court for the April 2015 term and submitted for
decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence shows that Jimmy Wayne Wright was concerned that his wife, Karen, was having an affair with Jimmy Jackson. On the evening of March 2, 2005, the appellant drove Wright to a residence, where Wright retrieved a sawed-off shotgun from a vehicle parked outside the residence. Early the next morning, the appellant pulled his car onto the side of a road, called Jackson, told Jackson that he was having car trouble, and asked for help. Accompanied by Chris Cash[2] and Tina Michelle McAdams, Jackson drove to the scene and parked his Ford Bronco on the side of the road, with its headlights directed to the open hood of the appellant's car. Jackson and Chris exited the Bronco, and McAdams stayed in the backseat of the Bronco. Jackson approached the appellant, who was standing near the front of his own car. The appellant explained that his headlights had gone out and that his car had "jumped time" and was backfiring.

Wright then emerged from some nearby trees, behind which he apparently had been hiding. Wright ran up and shot Jackson in the head with the sawed-off shotgun. Chris and the appellant immediately ran into a nearby field. Chris

[2] Chris Cash and Larry Craig Cash are cousins. To avoid confusion, we refer to the former as "Chris," and the latter as the "appellant."

tripped and fell, and when he did, he looked back and saw Wright approaching the Bronco. Chris heard McAdams scream, followed by two shots. Wright then went into the field and began to call out for the appellant. Wright came across Chris on the ground and — apparently mistaking Chris for the appellant — said that he thought that Karen (his wife) would have been in the car with Jackson. Realizing his mistake, Wright then stuck his gun in Chris's face. As Chris was pleading for his life, the appellant appeared. Wright then ordered Chris to go to the appellant's car, and Wright told the appellant to "get the lights on." As Chris and Wright sat in the appellant's car (with Wright keeping the gun pointed at Chris), the appellant worked on the car and was able to restore the headlights.

The appellant then started the car (without any backfire), and at Wright's direction, the appellant drove the three men to the home of Wright's parents. Wright took Chris inside the home and directed the appellant to wash the car. Eventually, Chris and the appellant left the home of Wright's parents, and the appellant had Chris taken home. Chris then contacted law enforcement, and the appellant was arrested later that day. Law enforcement officers found a piece of Jackson's jaw (with teeth attached) at the base of the windshield of the appellant's car.

The appellant contends that the evidence is insufficient to sustain his conviction for the murder of McAdams because it was not reasonably foreseeable that she would be present with Jackson that night and that Wright would decide to shoot her. Those occurrences were intervening causes, he argues, and so he was not the proximate cause of her death, regardless of whether he had expected Wright to fight Jackson. It is true that proximate causation is the standard for liability in felony murder cases. State v. Jackson, 287 Ga. 646, 649 (2) (697 SE2d 757) (2010). But "OCGA § 16-2-20 expands criminal liability from a defendant's own criminal acts (and their proximate consequences) to the criminal acts of his accomplices and agents (and their proximate consequences)." Id. at 655, n. 6 (4). The question, therefore, is whether the appellant was a party (under OCGA § 16-2-20 (b) (3) or (4)) to an aggravated assault that proximately caused the death of McAdams. See id. See also Whiting v. State, 296 Ga. 429, 431 (2) (768 SE2d 448) (2015). The appellant not only admitted that he thought there would be a fight between Jackson and Wright, but the appellant also previously had witnessed Wright's violent behavior, had driven Wright to a residence where he retrieved the sawed-off shotgun on the evening before the killings, used a ruse to make

4

Jackson come to the scene of his eventual death, drove Wright home afterwards, and did not contact law enforcement before his arrest. Furthermore, Wright's comment to Chris about expecting Karen to be with Jackson indicates that a second assault (upon Karen) had been planned. Even though McAdams evidently was not an intended victim, the evidence was sufficient for the jury to find beyond a reasonable doubt that the appellant was a party to the aggravated assault of McAdams under the doctrine of transferred intent. See Jones v. State, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013). See also Coe v. State, 293 Ga. 233, 235 (1) (748 SE2d 824) (2013); Smith v. State, 279 Ga. 423, 423 (614 SE2d 65) (2005) ("[W]hen an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it." (Citation and punctuation omitted.)); Wright v. State, 199 Ga. 576, 576 (2) (a) (34 SE2d 879) (1945) ("[i]f the defendant intended to kill his own [wife], but, under a mistake as to identity, killed another and different [woman], his act would be measured by the same standard as if he had killed his own [wife]"). Upon our review of the record, we further conclude that the evidence presented

at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that the appellant was a party to both felony murders of which he was convicted. <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. The appellant claims that the trial court erred when it failed to instruct the jury on "intent to murder" because each of the felony murder counts of the indictment charged that he had committed aggravated assault by assaulting the victim "with the intent to murder and while assaulting [the victim] with a firearm, a deadly weapon." In this way, the trial court impermissibly amended the indictment and also undermined his defense, the appellant argues, because he attempted to show at trial that he was unaware that Wright intended to kill Jackson.

The aggravated assault statute authorizes conviction upon proof of one or more alternative methods of assault — such as "[w]ith intent to murder," OCGA § 16-5-21 (b) (1), or "[w]ith a deadly weapon," OCGA § 16-5-21 (b) (2) — and those methods are expressed in the disjunctive in the statute.[3] See <u>Ross v. State</u>,

---

[3] In its entirety, OCGA § 16-5-21 (b) provides as follows:
    (b) A person commits the offense of aggravated assault when he or she assaults:

6

192 Ga. App. 65, 66 (2) (383 SE2d 627) (1989). In general, when a defendant is charged, as in this case, with the violation of a criminal statute "containing disjunctively several ways or methods a crime may be committed, proof of any one of which is sufficient to constitute the crime, the indictment, in order to be good as against a special demurrer, must charge such ways or methods conjunctively if it charges more than one of them." Stander v. State, 226 Ga. App. 495, 497 (1) (486 SE2d 712) (1997). See also Young v. State, 226 Ga. 553, 554 (1) (176 SE2d 52) (1970) ("As a general rule, where a statute specifies several means or ways in which an offense may be committed in the alternative, it is bad pleading to allege such means or ways in the alternative; the proper way is to connect the various allegations in the accusing pleading with the conjunctive term 'and' and not with the word 'or.'" (Citation and punctuation

---

(1) With intent to murder, to rape, or to rob;

(2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury;

(3) With any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation; or

(4) A person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

omitted)). At trial, however, "it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." Gipson v. State, 332 Ga. App. 309, 317 (5) (772 SE2d 402) (2015) (citation and punctuation omitted). See also Casillas v. State, 267 Ga. 541, 542 (1) (480 SE2d 571) (1997) (under an indictment for involuntary manslaughter that alleged two underlying misdemeanors conjunctively, "the State would be required to prove only that [the defendant] perpetrated an involuntary manslaughter while in the commission of one of the alleged misdemeanors"); Stander, 226 Ga. App. at 497 (1).

Because of defense counsel's imputed knowledge of this rule, and because the indictment charged that the appellant caused the victims' death by assaulting them with intent to murder and with a deadly weapon, the appellant was on notice that the State could prove his guilt of the felony murders in either of the ways alleged in the indictment. See Huntley v. State, 271 Ga. 227, 229 (2) (518 SE2d 890) (1999); Stander, 226 Ga. App. at 497 (1). See also Scott v. State, 274 Ga. 153, 154 (2) (549 SE2d 338) (2001) ("unlike . . . Harwell [v. State, 270 Ga. 765 (512 SE2d 892) (1999)], the trial court did not instruct the jury on an

8

alternative method of committing aggravated assault that was not alleged in the indictment"); Minter v. State, 170 Ga. App. 801, 802 (1) (318 SE2d 226) (1984) ("This is not a case where the indictment stated the offense with unnecessary particularity . . . . Rather, the indictment described two separate ways in which the crime could be committed; proof of either would constitute the crime with which [the appellant] was charged." (Punctuation omitted)). Although the wording of the indictment would have allowed the State to seek convictions for felony murder during the commission of aggravated assault under either paragraph (1) or (2) of OCGA § 16-5-21 (b), we conclude that the trial court's decision — without objection by the State — to instruct the jury only on assault with a deadly weapon under paragraph (2) was authorized by the evidence and does not amount to error.[4] See Lopez v. State, 260 Ga. App. 713, 716 (3) (580 SE2d 668) (2003). See also Palencia-Barron v. State, 318 Ga. App. 301, 306 (3) (733 SE2d 824) (2012) ("The trial court's duty in delivering charges to the jury

---

[4] In view of this conclusion, we need not address the appellant's further claim that the trial court aggravated its error by refusing to provide the jury with a copy of the indictment. Moreover, an indictment is not evidence, and its viewing by the jury is not always required, at least when, as in this case, the jury is properly instructed with respect to its allegations. See Crowe v. State, 265 Ga. 582, 591 (16) (458 SE2d 799) (1995); Bostick v. Ricketts, 236 Ga. 304, 305 (1) (223 SE2d 686) (1976).

is to tailor those charges not only to the indictment but also adjust them to the evidence at trial. Any instructions should stand upon a base founded in evidence or lack thereof." (Citation and punctuation omitted)). Moreover, "as the trial court's omission from its charge of [one] mode[] of commission of the crimes charged was advantageous to [the appellant], any error in this regard was harmless." Davis v. State, 181 Ga. App. 28, 29 (2) (351 SE2d 458) (1986).

3. Last, the appellant contends that the trial court erred when, over his objection, it declined to give his requested jury charge on the lesser included offense of involuntary manslaughter.[5] Such a jury charge was authorized, the

---

[5] In his appellate brief, the appellant does not specify whether this contention relates to felony involuntary manslaughter under OCGA § 16-5-3 (a) (requiring "the commission of an unlawful act other than a felony") or misdemeanor involuntary manslaughter under OCGA § 16-5-3 (b) (requiring "the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm") or both, much less does he identify any misdemeanor on which a verdict of felony involuntary manslaughter could be based. See Brown v. State, 269 Ga. 67, 69 (2) (495 SE2d 289) (1998). And the record does not include his requests to charge. See Mangrum v. State, 285 Ga. 676, 679-680 (5) (681 SE2d 130) (2009). The record does show, however, that the appellant objected to the omission of his requested charges on both felony or misdemeanor involuntary manslaughter and that he argued at the hearing on the motion for new trial that the "unlawful act other than a felony" required by OCGA § 16-5-3 (a) was simple assault or battery in this case. And the trial court addressed the omission of an involuntary manslaughter charge on the merits and effectively identified the alleged "unlawful act other than a felony" as simple assault or battery. For purposes of this appeal, we will assume that the appellant properly requested jury charges on felony involuntary manslaughter during the commission of an assault or battery and on misdemeanor involuntary manslaughter. See O'Connell v. State, 297 Ga. 410, 412, n. 3 (3) (774 SE2d 645) (2015).

appellant claims, by evidence that at the time the assaults took place, he thought there would be only some sort of fight and he was unaware that Wright was in possession of a weapon. It is true that "a charge on involuntary manslaughter should be given, upon a proper request, when there is slight evidence to support it." Lane v. State, 268 Ga. 678, 680 (2) (492 SE2d 230) (1997) (citation and emphasis omitted). But where "the evidence shows either the commission of the completed offense (of felony murder and aggravated assault), or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense." Brown v. State, 288 Ga. 364, 367 (2) (703 SE2d 609) (2010).

A defendant who lacks knowledge that his co-defendant possessed the gun that was used to commit an aggravated assault may nevertheless be a party to the aggravated assault. See Cornette v. State, 295 Ga. App. 877, 881-883 (3) (673 SE2d 531) (2009). To the extent that the evidence shows (as the jury obviously concluded it did) that the appellant and Wright shared a criminal intent to commit an assault upon Jackson, the appellant is chargeable with the foreseeable acts undertaken by Wright in the furtherance of that shared intent, even if Wright did something or employed some instrument that the appellant subjectively did not expect. And even assuming that the appellant did not know

11

that Wright was armed with a shotgun, it certainly is foreseeable that an assault in the circumstances presented here — an early-morning ambush on the side of a road to which the victims were lured unwittingly — might involve the use of a deadly weapon and may result in serious injury or loss of life. Accordingly, when Wright employed a deadly weapon to assault, the appellant was chargeable with that use of a deadly weapon, so long as he and Wright shared a common intent to assault. On these facts, the appellant either was a party to murder and aggravated assault, or he was guilty of no crime at all. See Igidi v. State, 251 Ga. App. 581, 586 (4) (554 SE2d 773) (2001); Hopkins v. State, 227 Ga. App. 567, 568 (1) (489 SE2d 368) (1997), overruled on other grounds, Mullins v. State, 270 Ga. 450, 451 (2) (511 SE2d 165) (1999). Accordingly, the trial court did not err when it decided not to charge the jury on involuntary manslaughter.

Judgment affirmed. All the Justices concur.