311 Ga. 421
FINAL COPY


S21A0383.  MOON v. THE STATE.


WARREN, Justice.

Sergio Moon was tried by a Walton County jury and convicted of felony murder and other crimes in connection with the shooting death of Linda Flint, the great-grandmother of his children.[1]  On appeal, Moon argues that the trial court erred when it denied his

---

[1] Flint was killed on June 13, 2018.  On January 25, 2019, a Walton County grand jury indicted Moon, charging him with malice murder, felony murder predicated on aggravated assault, felony murder predicated on possession of a firearm by a convicted felon, aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, possession of a firearm during the commission of a felony, and cruelty to children in the first degree. Moon was tried in February 2019.  The jury found Moon guilty of felony murder predicated on possession of a firearm by a convicted felon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony, but found him not guilty of the remaining counts.  The trial court sentenced Moon to life in prison for felony murder and a consecutive five-year term for possession of a firearm during the commission of a felony.  The conviction for possession of a firearm by a convicted felon merged for purposes of sentencing.  Moon filed a timely motion for new trial on February 12, 2019, and amended it through new counsel on December 19, 2019.  After a hearing, the trial court denied the motions, both original and as amended, on August 21, 2020.  Moon timely appealed, and the case was docketed in this Court to the term beginning in December 2020 and submitted for a decision on the briefs.

request to charge the jury on involuntary manslaughter; the evidence presented at trial did not show that Moon's felonious conduct was "inherently dangerous," and as a result, his felonious conduct could not serve as a predicate for felony murder; the prosecutor made an improper argument at closing; and the evidence was insufficient to support his felony murder conviction. Seeing no error, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. Moon lived in an apartment with Kendra Porter and their three children. Porter's grandmother, Flint, was staying in the apartment temporarily. On June 13, 2018, Moon was inside the apartment, smoking marijuana and "chilling" with Porter and her cousins, Delvin and Jonrunte Smith, who lived next door. Later that day, UPS delivered a package for Moon containing a bore sight — a bullet-shaped device that fits into a gun's chamber and shines a laser out of the barrel when struck by the firing pin. Moon, a convicted felon, sat down at the kitchen table and began trying to fit the bore sight into his .40-

2

caliber handgun. At one point, the laser was pointed at Flint's head, and both Porter and Flint told Moon to stop playing with the gun.

As Moon continued manipulating the gun and bore sight, the gun discharged and a bullet struck Flint in the head and killed her. At the moment of the shooting, Flint was near the sink preparing food, Porter's minor daughter was next to Flint, and the two Smith brothers were sitting at the table with Moon. Porter and another of her children were elsewhere in the apartment. When Porter came toward the kitchen after she heard the gunshot, Moon approached her, dropped to his knees, and said he had "f***ed up." After a police investigation, Moon was eventually arrested.

At trial, the State presented evidence that, shortly before Flint was shot, Moon had an argument with Flint about money that she owed him. The State also presented evidence that, after the shooting, Moon fled the scene and told others that he would kill them if they told anyone about how Flint died: "whoever tells going to get killed." Police officers arrived at the scene after Moon had fled, and Porter told them initially that someone broke into the house and

3

shot Flint, though she later admitted that Moon "had shot her."

Moon testified in his own defense, and his testimony was largely consistent with the evidence presented by the State. Among other things, Moon admitted that he was smoking marijuana on the day Flint was shot and that he was a convicted felon and knew he was "not supposed to have a gun." He also admitted that the gun discharged as he was attempting to make the bore sight work. Specifically, Moon testified that when he first placed the bore sight into the chamber of his .40-caliber gun, it did not work properly, so he removed the bore sight and the gun's magazine, which resulted in a live round being chambered. Moon suggested that he was trying to eject that live round when the gun discharged:

> I took the clip back out because I know once you rack it again, a live round go in, but when you take the clip out, if you pull the slide back far enough, it gives two ways for the bullet to come. It can drop down through the handle or it can come out through the top part. And when I was pulling it back, it just went off.

2. Moon contends that the trial court erred when it refused to give a jury instruction on involuntary manslaughter as a lesser-

4

included offense of malice murder or felony murder. Because an involuntary manslaughter instruction was not warranted, Moon's argument fails.[2]

Before trial, Moon filed a written request for a pattern jury instruction on involuntary manslaughter and a more specific pattern instruction on involuntary manslaughter predicated on the misdemeanor charge of reckless conduct. The trial court did not give the requested instructions, however, and Moon objected. The trial court explained its decision:

> I did not give that intentionally. It was the Court's determination that, based on the facts of this case, [there] was either no crime or there is the crime that is charged in Count 3 [felony murder predicated on possession of a firearm by a convicted felon]. Therefore, there is no lesser-included in between there. . . .

Later, in denying Moon's motion for new trial on this issue, the trial court concluded that

> if [Moon] was guilty of reckless conduct as requested in [his] requested charge[,] then he was guilty of an inherently dangerous act which would then provide the basis of the felony murder charge with possession of a

---

[2] Moon's claim is moot as to the charges of malice murder and felony murder predicated on aggravated assault for which he was acquitted.

firearm by a convicted felon as alleged in count three of the indictment. Since such a charge would cause confusion to the jury, it was not error to not give [the involuntary manslaughter] requested jury instruction.

"Involuntary manslaughter" is defined in OCGA § 16-5-3 (a) as "caus[ing] the death of another human being without any intention to do so by the commission of an unlawful act *other than a felony*." (Emphasis supplied.) "[A] charge on involuntary manslaughter should be given, upon a proper request, when there is slight evidence to support it." *Cash v. State*, 297 Ga. 859, 863-864 (778 SE2d 785) (2015) (citation and punctuation omitted). Conversely, where evidence presented at trial shows "the commission of [a] completed offense . . . or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense." Id. at 864 (citation and punctuation omitted).

Here, by admitting to being a felon and possessing a gun, Moon admitted to committing an unlawful act that was a felony. See OCGA § 16-11-131 (b) (felon in possession of a gun is a felony offense). And that felony precluded any instruction on involuntary

6

manslaughter as a matter of law.  See *Finley v. State*, 286 Ga. 47, 49-50 (685 SE2d 258) (2009) (holding that the trial court did not err when it denied the defendant's requested involuntary manslaughter jury instruction because the evidence at trial "did not reflect that the killing resulted from an act other than a felony, given [the defendant's] status as a convicted felon and his admission that he possessed a gun, however briefly").  See also *Mayweather v. State*, 254 Ga. 660, 661 (333 SE2d 597) (1985) ("Where an act that causes a death is a felony, a requested charge on felony grade involuntary manslaughter is properly denied.").  Given that Flint's shooting indisputably occurred as a result of Moon committing a felony — i.e., possession of a gun by a convicted felon — the trial court did not err by refusing to instruct the jury on involuntary manslaughter.[3]

---

[3] Moon focuses his argument on two cases, *Manzano v. State*, 282 Ga. 557, 559 (651 SE2d 661) (2007), and *Seabolt v. Norris*, 298 Ga. 583, 586 (783 SE2d 913) (2016), in which we held that the trial court should have given an involuntary manslaughter instruction.  His reliance on these decisions is unavailing because unlike Moon, the defendants in *Manzano* and *Norris* were not found guilty of possession of a firearm by a convicted felon.  This distinction is critical because, unlike Moon's conduct, the conduct at issue in *Manzano* and *Norris* did not definitively constitute a felony.

3. Analogizing the facts of his case to *Ford v. State*, 262 Ga. 602, 602 (423 SE2d 255) (1992), Moon contends that the evidence presented at trial did not show that his "status offense" of possession of a firearm by a convicted felon was "inherently dangerous" such that it could serve as a predicate offense for felony murder. We conclude that Moon's contention lacks merit.

Under Georgia's felony murder statute, "[a] person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice." OCGA § 16-5-1 (c). Although the text of the statute "does not by its terms limit the type of felony that may qualify as a predicate for felony murder," *Shivers v. State*, 286 Ga. 422, 425 (688 SE2d 622) (2010) (Nahmias, J., concurring specially), this Court has nonetheless held that "dangerousness is a prerequisite to the inclusion of a felony as an underlying felony under the felony murder statute of this state," *Ford*, 262 Ga. at 602.[4] In *Ford*, a convicted

_____

[4] Some Justices on this Court have doubts about the correctness of the statutory analysis that led to that holding. But we need not decide in this case

8

felon accidentally discharged a pistol while unloading it inside a house. See id. The bullet went through the floor and into the basement apartment where it struck and killed the victim, but there was "no evidence that at the time of the shooting [the defendant] was aware of the existence of the apartment or of [the victim's] presence in it." Id. The defendant was convicted of felony murder predicated on a felon-in-possession charge, but this Court reversed the felony murder conviction because "the status felony was neither inherently dangerous nor life-threatening *under the circumstances of th[at] homicide*." Id. (emphasis supplied).

Contrary to his claim on appeal, the facts of Moon's case are not analogous to those in *Ford*. Unlike in *Ford* — where the defendant was unloading a gun and the record contained no evidence that he was aware of the victim's presence in an apartment below him — the record here shows that Moon manipulated a loaded handgun in close proximity to other people in the same room,

whether *Ford* should be reconsidered because, as discussed below, Moon is guilty of felony murder even under *Ford*'s narrow interpretation of OCGA § 16-5-1 (c).

9

including a child; pointed the gun at Flint's head at some point before she was shot; continued manipulating the gun after repeatedly being told to stop; and admittedly engaged in this conduct after smoking marijuana. We have no trouble concluding that, based on the facts of this case, Moon's conduct in possessing the gun while being a convicted felon was inherently dangerous. See *Shivers*, 286 Ga. at 424 (in determining whether a felony is "inherently dangerous" under *Ford*, "a court does not consider the elements of the felony in the abstract, but instead considers the circumstances under which the felony was committed") (citation and punctuation omitted). Accordingly, because the conduct that proximately caused Flint's death satisfies both the textual definition of felony murder under OCGA § 16-5-1 (c) and this Court's interpretation of felony murder in *Ford*, Moon's claim fails.

4. Moon contends that the prosecutor made an improper closing argument that "could reasonably have changed the result of the trial." Specifically, Moon claims that the prosecutor argued that it was inherently dangerous for him to be handling a weapon simply

10

because he was a convicted felon. Moon's contention fails because it was not preserved for appellate review: he did not object to the State's closing argument at trial, and we do not review unpreserved challenges to closing arguments in non-death penalty cases, even for plain error. See *Gates v. State*, 298 Ga. 324, 328 (781 SE2d 772) (2016) ("[B]ecause Gates did not object to the prosecutor's argument at trial, he has waived review of these arguments on appeal, as the alleged errors here based on improper remarks during closing argument are not subject to review on appeal for plain error.").

5. Moon also argues that the evidence presented at trial was not sufficient to support his conviction for felony murder. Specifically, Moon argues that the State failed to prove beyond a reasonable doubt that he acted in a "dangerous manner per se" or that his conduct "was inherently dangerous." This argument, however, is substantively identical to Moon's argument that his possession of a firearm as a convicted felon was not inherently dangerous and therefore could not serve as a predicate for his felony murder conviction. For the reasons outlined in Division 3, the

11

evidence presented at trial, when viewed in the light most favorable to the verdicts, was sufficient to authorize a rational jury to find Moon guilty beyond a reasonable doubt of the crimes for which he was convicted.  See *Jackson v. Virginia*, 443 U.S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

*Judgment affirmed.  All the Justices concur.*

Decided May 3, 2021.

Murder. Walton Superior Court. Before Judge McGarity, Senior Judge.

*Frost & Carey, Tyler A. Carey*, for appellant.

*Layla H. Zon, District Attorney, Randal M. McGinley, W. Cliff Howard, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kathleen L. McCanless, Assistant Attorney General*, for appellee.